IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



JERRIE P. BARHANOVICH, EXECUTRIX
AND PERSONAL REPRESENTATIVE
OF THE ESTATE OF MARK BARHANOVICH, DECEASED        PLAINTIFF

VERSUS                              CIVIL ACTION NO. 1:13cv84LG-JMR

C. F. BEAN LLC and
ARCHER WESTERN CONTRACTORS, LLC                    DEFENDANTS

## COMPLAINT

The Plaintiff alleges:

1.   The Plaintiff is an adult resident citizen of Mississippi residing at 687 Waters View Drive, Biloxi, Mississippi 39532.

2.   The Defendants are:

   a.   C. F. Bean LLC ("Bean Dredging"), a limited liability company under Louisiana law, with its principal place of business at 619 Engineers Road, Belle Chasse, Louisiana 70037, that is authorized to do business in Mississippi and doing business in Mississippi, with CT Corporation System, 645 Lakeland East Dr., Suite 101, Flowood, MS 39232 as its registered agent for service of process; and

   b.   Archer Western Contractors, LLC ("Archer Western"), a limited liability company under Delaware law, with its principal place of business at 929 W. Adams Street, Chicago, Illinois 60607, that is authorized to do business in Mississippi and doing business in Mississippi, with Corporation Service Company, 506 S. President Street, Jackson, MS 39201 as its registered agent for service of process.

### Background And Jurisdictional Allegations

3.   Mark Barhanovich, Deceased (the "Deceased" or "Mr. Barhanovich") was severely injured on September 16, 2012 at age 54 on the navigable waters of the United States and the navigable territorial waters of Mississippi while an occupant of a vessel in navigation as a proximate result of the Defendants' negligence in creating a submerged

obstruction in the navigable waters of the United States and the territorial waters of Mississippi, and in failing to adequately monitor, mark, light, and warn of an submerged obstruction that was not visible.  Mr. Barhanovich then later died on September 16, 2012 as a consequence of his injuries.

4.     This is an admiralty and maritime claim under the general maritime law of the United States within the meaning of Fed.R.Civ.P. 9(h); within the Court's admiralty jurisdiction under 28 U.S.C. §1333(1) and the U.S. CONST., art. III, §2; and within the Rivers and Harbors Act, 33 U.S.C. §403.

5.     Bean Dredging and Archer Western are subject to personal jurisdiction in this District because, among other things, their acts and omissions in Mississippi were a proximate cause of tortious injury, and the acts and omissions arose from their performance, in whole or in part, of a contract and a subcontract in Mississippi.

### First Claim - - Maritime Negligence And Negligence *Per Se* For An Obstruction To Navigation

6.     Bean Dredging is a dredging company that provides maritime dredging services with a fleet of dredges, floating derricks, barges, equipment, and other vessels that Bean Dredging uses in port expansions, deepening of navigable waterways, and channel maintenance.

7.     Archer Western is a company engaged in the construction business that includes general contracting and construction management.

8.     In 2012, the Mississippi State Port Authority (the "Port") awarded a contract (the "contract") to Archer Western for the Mississippi State Port Authority Restoration Project (the "project").  The project and the scope of work under the contract included

dredging operations in the navigable waters of the United States and the navigable territorial waters of Mississippi and dredging and transport of dredge spoil material to a site at Deer Island off the shore of Biloxi, Mississippi and within the navigable waters of the United States and the navigable territorial waters of Mississippi.

9. The contract between the Port and Archer Western required Archer Western to comply with all federal, state, and municipal laws pertaining to the dredging work under the contract.

10. The contract between the Port and Archer Western allowed Archer Western to enter into subcontract agreements with others, such as Bean Dredging, for work under the contract.

11. Under the contract, Archer Western could not be relieved from its responsibility for completion of the work under the contract by the fact that Archer Western entered into a contract with a subcontractor for part of the work under the contract.

12. Archer Western was the "Contractor" under the contract with the Port. The contract stated the following with respect to subcontractors:

> "The Contractor shall be as fully responsible to the Port Authority for the acts and omissions of his Subcontractors and of persons either directly or indirectly employed by him."

13. Under the contract, Archer Western agreed to monitor dredging, hauling, and placement operations at all times by a full time "Quality Control Representative" and verify compliance with the Specifications under the contract, all applicable permits, and a Quality Control Plan. Under the contract, Archer Western agreed to provide daily progress reports with respect to the dredging, hauling, and placement of dredge material.

14. Under the contract, Archer Western agreed to conduct dredging operations

in a way that caused the least possible obstruction and inconvenience to public traffic and port operations, and agreed to furnish, erect, and maintain lights, warnings, and directional signs to give adequate warning to the public at all times of the construction and of any dangerous conditions that may be encountered as a result of the work.

15. Under the contract, Archer Western agreed to conduct all dredging and disposal operations using equipment with sufficient lighting as the contract specified. The contract required Archer Western to display signal lights and conduct dredging operations in accordance with the General Regulations of the Department of the Army and of the U.S. Coast Guard governing lights and day signals to be displayed by dredges and vessels engaged in laying cables or pipe, and governing lights to be displayed on vessels operating dredge pipelines.

16. Under the contract, Archer Western agreed to provide lights for marine equipment between sunset and sunrise and during periods of restrictive visibility, and agreed to provide lights for buoys that could endanger or obstruct navigation. Archer Western also agreed to maintain lights from sunset to sunrise for the observation of dredging operations when night work was in progress in conformity with Coast Guard requirements for visibility and color.

17. On information and belief, Archer Western as "contractor" had a subcontract (the "subcontract") with Bean Dredging as "subcontractor" under which Bean Dredging agreed to perform the dredging work for the project required by the contract between the Port and Archer Western.

18. Under the subcontract, Bean Dredging was the "Subcontractor" and Archer Western was the "Contractor" and the Port was the "Owner."

19. Under the subcontract, Bean Dredging agreed to furnish all labor, materials, equipment, and supervision required to perform the dredging work and dredging responsibilities required by Archer Western's contract with the Port. Under the subcontract with Archer Western, Bean Dredging certified that Bean Dredging was fully familiar with the "Contract Documents" and the "Prime Contract Documents", which included the contract between Archer Western and the Port.

20. Under the subcontract, Bean Dredging agreed to the following provision:

> "The Subcontractor assumes toward Contractor all of the obligations, risks and responsibilities that Contractor by the Contract Documents, has assumed toward the Owner and the Subcontractor is bound to the Contractor by those obligations in the same manner as the Contractor is bound by the Owner.

21. Under the subcontract, Bean Dredging agreed to comply with all safety requirements imposed by Archer Western and the Port and agreed to conduct its operations in a safe manner.

22. Under the subcontract, Bean Dredging agreed to be bound by, and comply with, all federal, state and local laws, ordinances, and regulations applicable to Bean Dredging's work under the Subcontract.

23. Archer Western and Bean Dredging began dredging operations in 2012, and those dredging operations were underway on the morning of September 16, 2012 near Deer Island in the navigable waters of the Mississippi Sound and Biloxi Bay.

24. In the dredging operations, Archer Western and Bean Dredging were required to use, and used, sections of submersible dredge pipeline for the removal and disposal of dredge spoil materials.

25. On information and belief, on September 16, 2012, Archer Western and Bean

Dredging left sections of dredge pipeline submerged in navigable waters near the surface of the water near Deer Island.

26.     Archer Western and Bean Dredging had a duty to exercise ordinary and reasonable care under the general maritime law and the contract and subcontract, and under state and federal law, including federal and state regulations.

27.     On information and belief, the dredge pipeline sections were not resting on the bottom of Biloxi Bay or the Mississippi Sound, but were above the charted bottom of the navigable waters and were inadequately monitored, marked, lighted, and inspected, and were not visible to vessels lawfully navigating on the surface.

28.     Archer Western and Bean Dredging negligently did not adequately monitor, mark, light, inspect, and warn of the submerged dredge pipeline that was not visible to other vessels lawfully navigating on the surface on September 16, 2012.

29.     On September 16, 2012, the submerged dredge pipeline was an obstruction to navigation that restricted, endangered, and interfered with navigation, and created an unreasonable risk of harm to navigation.

30.     On September 16, 2012, the submerged dredge pipeline was a hazardous and unlawful obstruction to navigation of vessels on the navigable waters of the United States and the navigable territorial waters of Mississippi.

31.     On September 16, 2012, it was reasonably foreseeable to Archer Western and Bean Dredging that the submerged dredge pipeline was an obstruction to navigation that posed an unreasonable risk of harm to maritime navigation.

32.     On the morning of September 16, 2012, Mr. Barhanovich and one other person were in a 24' vessel (the "vessel") powered by a single outboard motor and headed

to a fishing reef known as "Katrina Reef" in the Mississippi Sound. During the trip to the fishing reef, Mr. Barhanovich's vessel came into contact with the inadequately marked and inadequately lighted submerged dredge pipeline near Deer Island in the navigable waters of the United States and the territorial waters of Mississippi.

33. The contact between Mr. Barhanovich's vessel and the submerged dredge pipeline caused the running and spinning propellor of Mr. Barhanovich's outboard motor to come out of the water and enter the vessel. The propellor struck, cut, and severely injured Mr. Barhanovich.

34. Mr. Barhanovich was taken to Ocean Springs Hospital on September 16, 2012 for medical treatment, but later that day died from his severe injuries.

35. By negligently creating a submerged and hazardous obstruction to navigation and by failing to adequately monitor, mark, light, inspect, and warn of the submerged dredge pipeline, the Defendants also violated requirements and duties imposed by federal law under the Rivers and Harbors Act and under 33 C.F.R. §88.15, and under the contract between the Port and Archer Western and the subcontract between Archer Western and Bean Dredging.

36. The Defendants were negligent *per se*. The Defendants' failure to comply with federal law constitute violations of the *Pennsylvania Rule*, and shifts the burden of proof to the Defendants to demonstrate that their acts and omissions could not have contributed to the damages the Plaintiff sustained.

37. The Defendants' negligent acts and omissions were a proximate cause of the Deceased's personal injuries and damages, including medical expenses and conscious pain and suffering, and was a proximate cause of the death of the Deceased and damages

to the wrongful death beneficiaries of the Deceased, including loss of services, society, companionship, support, and other wrongful death damages.

## Second Claim - - Punitive Damages

38. The Plaintiff realleges and incorporates the allegations of paragraphs 1 through 5 and the First Claim.

39. On information and belief, the Defendants' managerial personnel knew, or should have known, about previous incidents before September 16, 2012 in which vessels had struck the Defendants' unmarked and unlit submerged dredge pipeline in navigable waters near Deer Island in Biloxi Bay and the Mississippi Sound.

40. On information and belief, despite the knowledge the Defendants had or should have had about the previous incidents, the Defendants authorized its employees and the master and crew of its vessels and dredging fleet to continue using the methods and policies in the dredging operations that resulted in a failure to adequately monitor, mark, light, inspect, or warn of the hazardous submerged dredge pipeline that was an obstruction to maritime navigation. The Defendants authorized, approved, continued, and ratified the use of wanton and grossly negligent methods, policies, and conduct that caused Mr. Barhanovich's injury and death.

41. Despite the knowledge the Defendants had or should have had about the previous incidents, the Defendants failed to take effective action to adequately monitor, mark, light, inspect, or warn of the hazardous submerged dredge pipeline that was an obstruction to maritime navigation.

42. The acts or omissions of the Defendants constitute reckless, wanton conduct and gross negligence that justifies the imposition of punitive damages against the

Defendants.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages in an amount sufficient to compensate the Plaintiff for the Deceased's medical expenses, funeral and burial expenses, costs of estate administration, conscious pain and suffering, and for wrongful death damages described in this Complaint, and for punitive damages against the Defendants in an amount the Court deems just.

**Respectfully submitted, this the 20th day of March, 2013.**

> JERRIE P. BARHANOVICH, EXECUTRIX
> AND PERSONAL REPRESENTATIVE
> OF THE ESTATE OF
> MARK BARHANOVICH, DECEASED, PLAINTIFF
>
> BY: *Paul T. Benton*
> Paul T. Benton, Attorney for Plaintiff

David A. Wheeler
P. O. Box 264
Biloxi, MS 39533-0264
228-374-6720/ 228-374-6721 Fax
wheelattys@aol.com
Miss. Bar No. 7126

Wynn E. Clark
2510 16th Street
Gulfport, MS 39501
228-575-9996/ 228-575-9030 Fax
wynnclark@bellsouth.net
Miss. Bar No. 6279

Paul T. Benton
Law Office of Paul T. Benton
181 Main Street (39530)
P. O. Box 1341
Biloxi, MS 39533
E-Mail: bentonoffice@bellsouth.net
228-432-0305
228-432-0336 (facsimile)
Miss. Bar No. 2432